Good morning, Your Honor. It's Jason Serapel, Defenders. On behalf of Mr. Martinez, the appellant in this case, and please, the Court You were here the other day, weren't you? I was here on Tuesday, Your Honor, yes. Good to see you again. You too, Your Honor. I'm here today because the District Court erred in denying Mr. Martinez's petition in this case, and he erred for no less than two reasons. First, the District Court failed to conduct any sort of analysis to determine whether or not the immigration judge and the decision the immigration judge rendered was so inconsistent with the facts of the case that it amounted to a failure to exercise discretion. All right. So now we've had – first of all, we've had a change in the law because we have DeMoor v. Kim. And second of all, we've had an affirmance by this Court or a denial of the substantive petition by this Court. So why isn't the agency right on either the ground that under DeMoor v. Kim, you didn't have to have the hearing at all that you had, or more than that, that the relevant statute that applies has now changed anyhow? Whether 1231 still applies. First, with regard to DeMoor v. Kim, I guess we should do a 1231 and 1226C first. Depending on which statute this Court decides Mr. Martinez is being detained under, that will determine whether Kim applies to him or not. In this case, 1226 still applies to Mr. Martinez's detention for several reasons. One, when you look at the plain language of the statute, and this is what Rogowski v. Reno did, a District Court case, and this issue is one that hasn't been decided as far as I'm aware by any Court of Appeals. There are very limited District Court opinions on this, and I provided the Court with Rogowski v. Reno from Connecticut. And that Court said that 1226 must apply to somebody in proceedings when they are seeking judicial review of an immigration judge or a BIA order denying relief. And the reason they said that had to be the case was twofold. First, the language of 1226A discussed whether someone could be detained pending a decision. So the question is, pending a decision, what constitutes a decision? Is it an administrative decision, or is it a decision by a court that is conducting judicial review of the administrative decision? The government's position is that it's an administrative decision. But that, Rogowski said, doesn't make sense, because that would completely take out of effect the section to 1231 in A1B2, which talks about when the removal period begins. And the removal period, as this Court is aware from Ma and Zaitvidas, is the period of time during which the immigration service would have an opportunity to deport somebody. Well, it discusses very plainly in 1231 when that period begins, and it's controlled by the latest of one of three dates. And the date that Rogowski, or the issue that Rogowski noted, was that if a removal order is being judicially reviewed and a stay has been ordered, then 1231's removal period can't begin under that subsection 2 until after the judicial review has been completed. Okay. But it has been. Not in this case. This Court did rule on this case in August, but Mr. Martinez subsequently has filed a petition for certiorari with the Supreme Court of the United States. And you think that so the nice little narrow question is whether the 1231 is triggered by the final order of this Court, even if there's a cert petition pending, or whether you get to wait until the cert petition is denied. Right. And I believe that this Court has to wait, and that 1231's application has to await the decision by the Supreme Court. It's significant in this case to note that he presented a public claim to the Supreme Court as well. The Supreme Court has actually ordered the Solicitor General over their willingness to concede and not file a response. They've ordered the Solicitor General to file a response to Mr. Martinez's petition. Which is arguing that he doesn't have an aggravated felony for a burglary conviction he sustained, because it doesn't squarely fit within the parameters of the Taylor analysis. That is, there was no unprivileged entry, and that the California statute doesn't require an unprivileged entry, whereas the common law definition of burglary would. Therefore, categorically, he's not an aggravated felon. That's what he's arguing. I believe that because the Supreme Court has ordered a response, I think there's a pretty fair inference that they believe there's some sort of merit, or at least some colorful claim, presented by Mr. Martinez. So this isn't the typical case, I think, that Kim V. Ziegler referenced, where people are just filing frivolous briefs to delay what many courts have called the inevitable, which is their deportation or removal. Which leads us to the next point. Based on the doubt, I would submit that 1226C has to apply. And because 1226C applies, the issue now becomes, does Kim V. Ziegler mean immigration is required at all to provide a hearing to Mr. Martinez with regard to bond? Well, it's our position that immigration has to provide the bond hearing under Mr. Martinez's Fifth Amendment due process rights. First, I argue in my papers that Kim doesn't apply specifically to Mr. Martinez's case. For one very important reason that the Court in Kim emphasized in its very last sentence. Kim specifically limited the holding where it upheld mandatory detention without review to cases where individuals in removal proceedings have conceded their deportability. And many other cases, such as PARA, have very specifically found that that may not, and does not in many instances, allow for detention without a bond hearing based on due process rights. And the reason is because those due process rights haven't yet been extinguished when there's an appeal pending. And especially so in this case when the appeal that's pending presents a colorful claim given the Supreme Court's order to the Solicitor General to respond. So I believe when you read Kim V. Ziegler and you know how many times the Court actually mentions that the individual there had conceded deportability and that he was simply delaying the inevitable, that was one of the motivating factors of the Supreme Court in that case was to uphold the detention. It was because if there's no way for him to stay in the States, no way for him to remain in the country, there was a risk of flight after the Supreme Court was discussed. But in cases where people are actually filing appeals, and not only an appeal, but an appeal that's colorful and has merit to it, due process requires that the bond hearing be given to the alien in detention. I cited numerous cases in my requirements, many district court cases, but the Second Circuit case in Parra makes this clear. And that's how they distinguish the case in Parra from someone who does have an appeal pending. That individual had conceded his deportability. There was no fight, no allegation that he could remain in the United States. In this case, that is the distinct factor. Let me ask you. Let me go back to 1231. All right? Is there currently a stay of removal? Excuse me? Is there currently a stay of removal in effect? Well, the issue in this case, there isn't. Well, yes, there is. There is a stay of removal in this case. What happened was the mandate issued, but subsequent to the mandate issuing, and the court order said the stay would be liftable in the mandate issued. That's when Mr. Martinez filed a petition for writ with the Supreme Court. After that, and I don't recall the specific date, he did request in that case a stay with this court pending the outcome of certiorari. Now, obviously, if that came in after the mandate, it hasn't been ruled upon yet. So doesn't everything turn on that since 1231 says that the beginning period is if the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order? Well, just because the Ninth Circuit, this Court hasn't yet ruled on its request for a stay doesn't mean there isn't one. All right. But it's going to rule. I mean, if it hasn't ruled today, it will rule tomorrow. So tomorrow we'll know whether 1231 applies or not, because if the stay is denied, then it won't apply. Is that right? No, I don't think so. I think you can say today that 1226 applies because under the general order of this court, when there's an application for a stay of deportation, it's automatically granted until it's ruled upon. All right. But as of this moment, but tomorrow it could change. Well, this is an interesting issue because I've talked to opposing counsel about this. If there's a petition for a certiorari pending, obviously, Mr. Martinez should be filing it, and we will be assisting him, hopefully, in filing a stay with that court if the one in the Ninth Circuit isn't granted. However, this is a pro se petition, and that's what's significant to note. This court, and obviously this court in this panel here today, isn't here to rule on the merits of his request for a stay, but I think it's very significant to note that the court has an obligation to construe his pleadings liberally because he did file them without the assistance of counsel. And if that's the case, the request for the stay in the related case should be treated as a request to maybe withdraw the mandate pending the certiorari. But that's not before us. Correct. But that is what obviously would impact whether 1226 or 1231 apply. But I think because there is review by the Supreme Court ongoing and because immigration has agreed not to deport him, even without the stay of the Ninth Circuit. How do we know that? Is that in the record? This isn't in the record. This is something I discussed with counsel, and maybe he can enlighten the Court later. But at this point, it appeared that immigration was prepared to remove him. And that has been stopped because there is a pending petition for writ, and the Solicitor General has been ordered to respond. Obviously, the issue of the stay is something that would affect whether this Court believes 1231 had applied. Did you ever tell us before? I mean, one of the problems I had in reviewing this case is I absolutely could not figure out whether there was any colorable issue on the aggravated felony. And no one ever told us that. I mean, you never gave us any information from which to judge that. There's nothing in your papers that tells you what the merits are, issue is, on the aggravated felony. As Your Honor indicated, that isn't related to this case. Well, but it's related in the sense that you're now telling us that the fact that this is a colorable claim is the key to everything, and it probably is. Well, that's in the other case, obviously. But it's the key to everything here, too, because it has to do both with whether or not their 1226 or 1231 applies, but it also probably has to do with if you apply 1226, how would you apply it? With regard to whether or not you'd be mandatorily detained or not? At this point, I haven't submitted a briefing because obviously it was a separate case at this point. I'd be more than happy to provide the Court with additional briefing regarding the merits of that case. The Ninth Circuit did issue an order denying this case, finding it didn't have jurisdiction, admittedly, after reviewing administrative documents. I've reviewed the Immigration Judge's order, and in the record, in this case, the Immigration Judge finds it was an aggravated felony because the burglary occurred and took place within a structure. However, the Immigration Judge never discusses whether the entry was privileged or unprivileged. And the burglary occurred in a J.C. Penney's that, as far as I was aware, was open during the regular course of business. So clearly, the entry isn't unprivileged. The business is open to the public, and as a member of the public, he was free to walk in. The Immigration Judge, in this case, however, never considered that. He never considered the issue of the privileged or unprivileged entry. He only decided that the entry occurred into a structure. As I recall, we have a case or cases in this circuit that, you know, involves, might be the same case, involves the situation where someone goes in to a Savon or whatever. And, sure, they're committed to go in, and they steal something, and they go out. And I think we've held it. That's a burglary. Well, this court recently held in Smith, U.S. v. Smith, which came out, I believe, last week. It discussed the three prongs of Taylor and what constituted a common law burglary. And one of them was an unprivileged entry. And if a reading of Taylor makes it apparent that the common law definition of burglary to be considered an aggravated felon requires an unprivileged entry, however, the California penal code involved in this case, the California burglary section 459, doesn't require that. And this court in Smith said that the California burglary statute's overbroad for that and other reasons. But specifically in Smith mentioned the fact that it doesn't require an unprivileged entry. So in that sense, this court has held that if the statute it issued doesn't involve an unprivileged entry, and it doesn't require that, then categorically it cannot be an aggravated felony. Can we go back to the 1231? This has been an illuminating argument in terms of understanding much more than the briefs told you. But at this moment, there is no state of removal. Is that correct? At this moment, there is under the general orders of this Court. Even after the mandate decision? It's general order. The general order of this Court, I think it's 6.4C1, talks about upon the filing of a motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the Court. When there's no appeal pending in this Court, is there? It's not now? There's one in, obviously. But there's nothing pending in this Court at this moment? The general order doesn't make mention. Obviously, that is an issue. Interesting. It also doesn't talk about the timing in relation to the mandate as far as C1 goes with regard to the temporary stay that's automatically issued. There's a separate general order, I believe, that deals specifically with the mandate. This is separate from the mandate. I believe that's Rule 41. This, the general order here, doesn't mention the mandate when it talks about issuing an automatic stay when a stay is requested. So in that sense, if you look at the general order, a stay should be issued. I understand what you're saying. I don't know what we've done with those things. Unfortunately, we didn't represent Mr. Martinez in the other case. Maybe you should. If this Court would certainly like to have federal defendants jump in and appoint us, we'd be more than happy to do that. Obviously, this is an interesting and complex case that maybe should be put together with another. With regard to whether 1231 or 1226 applies, Your Honor, I would submit right now 1226 applies. And until — Well, it depends whether we think we have a stay in effect at this point with no case pending but an application for a stay made, which is an interesting question. I don't know the answer to. And I certainly would — I never thought of it until Your Honor just asked it. I certainly would do some research and submit some briefing. I'm sure the opposing counsel will follow up with me. We can provide the Court with some more argument on that. If there's nothing further, I'd like to reserve a little bit of time for rebuttal. It seems the issue in this case is which statute governs it. Well, you actually owe us five minutes and 18 seconds. On Tuesday, you're required to go outside and pick up papers. I'll do that again today. The place has already been cleaned up. Good morning, Your Honors. Good morning. Sam Bethle. May it please the Court, addressing this question. I did — actually, I think it was an error in my brief because I said in the footnote that at least the government's point of view was, at the time that I wrote the supplemental brief, that there was a stay in effect. But I didn't notice until afterward that the request for stay was — the motion to stay was filed after the mandate issued. So it would appear that the Court doesn't have jurisdiction now. I have discussed this with opposing counsel. Of course, he does not represent Mr. Martinez in the other case. But we did discuss what's going to happen. Is it going to get transferred from one jurisdiction or is there going to be a stay request? Is Mr. Martinez going to request a stay? But I think now it's clear that there is no stay. So technically, at least at this moment in time, the removal period already began with this court order. Well, if you read our rule — I mean, it sounds right, but the rule he was reading from doesn't have an exception for — It doesn't have an exception for stay. As to whether or not there's a pending case here. Perhaps. It sounds logical, but — It doesn't seem logical that it could have any effect when there's no jurisdiction on the underlying motion, but that's possible. I — but let's say that there is a stay in effect and that there's still — Where is it? Who has the other case? Where is it? Well, Your Honor, it's at the Supreme Court. The cert petition was filed — Well, that's the other case. That's correct. That's the removal proceedings. Yeah. And why don't you get together with counsel in the other case and stipulate to a stay, and that will settle all this. Well, I think, in effect — well, he's not going anywhere. The Solicitor General's policy — there's no agreement or stipulation, but my understanding is this — is that since the Supreme Court has asked for a response to this cert petition, the alien will not be removed. So — but I wouldn't call it a stay because there's no agreement or obligation at this point. Well, is that in writing, that policy, somewhere? I don't know. Well, that's sort of — I mean, that's — the point of the provision in 1231 as to when the period — removal period begins is when does the removal period begin, i.e., from — how long can you take to remove the person once you can remove them? And if the government's endeavoring to remove them now, it's certainly more logical to suggest that 1231 doesn't apply. Does not apply? Does not apply, because there's no — what you're trying to figure out in 1232 is when does the removal period begin. Right? 1231. 1231. Right. Well, yes, Your Honor. I think maybe what helps me, anyway, understand is to look at this in three sections. We have the administrative proceedings before the final order by the BIA. Then we have — then everything is controlled by the judiciary during any kind of appellate direct review. And then after that, we're back in the administrative phase when we're talking about making efforts to remove the alien. And that's where Zadvodos covered. And on the administrative proceedings, the more of you can cover. We don't really have the rules that cover what happens here. It's very confusing looking at this. So what is the government's position about what's governing that? Well, the government's position is once the administrative proceedings are over and the regulations are written in this way, the BIA, the Immigration Court, they all understand that they no longer have any bond authority once those administrative proceedings are over. Now it's judicial proceedings. It's the Attorney General. Now it's the DHS. It's the Department of Homeland Security has this obligation now to remove the alien. But if there's been a judicial stay, everything stops. Everything's suspended. It's a stay. It's not — So you don't think that 1236 and 1231 abut each other? In other words, you think there's a hole in the middle? There's a period when neither applies? No, Your Honor. No, I think as soon as that BIA enters its order, the administrative proceedings are over. All right. But 1231 only plugs in a removal period that begins once the — if there's judicial review and the court orders a stay, then the removal probably begins with the date of the court's final order. So is there a hole in the middle in your theory? I would call that the tail wagging the dog only because I think if you look at the very first part of 1231, 1231A1A, the first phrase, the first operative phrase is when an alien is ordered removed. That is the trigger. That's what triggers the attorney general's authority actually mandate to remove the alien. Then it's just this removal period is the period during which this is to be done.  So I think if you look at the first part of 1231A1A, it's the when the order — when an alien is ordered removed. I'm sorry. I'm really not understanding that. A says, except as otherwise provided in this section, when an alien is ordered removed, the attorney general shall remove the alien within 90 days. B tells you when that 90 days is triggered. So — Well, I don't agree that it says it's when it's triggered. I think the 90-day period is triggered when the attorney general, now it's the Department of Homeland Security, has authority to remove the alien. And that authority begins when the alien is ordered removed. But we know that isn't true because B says it isn't true. On that theory, you'd only have 90 days to remove him. And then if you plug Zavadas in, you'd have to let the guy out after the 90 days, even while the review was still going on. You don't want that. Well, I believe Zavadas is talking about the period. Zavadas is interpreting 6, I'm sorry, Subsection 6 on what happens after the removal period. That's right. And if the removal period begins the day that the BIA has made a decision, the 90 days, you're going to run 90 days later, and you're going to have to deal with Zavadas. I think what Your Honor is raising is what the real question is, when does the removal period end? Well, it says. You have to remove him within 90 days. It ends in 90 days. It says so in the statute. Well, but unless the judiciary comes in and starts stating things, and then everything is in suspension. And so that's really the question, what happens during the suspension period when the Attorney General is ready to remove the alien, the authority has been given to the Attorney General,  That just seems a totally untenable reading of A and B as they abut each other. I think it is clear that the Attorney General has authority to remove the alien pending direct review unless there's a stay. Well, then why does, okay, unless there's a stay. But if there's a stay, then the removal period hasn't started yet, and there was a stay. But a stay means a stay not a vacatur of authority of the Attorney General. It's just a stay of the authority. The authority is still there. And the obligation to remove the alien. But that's not what the statute, excuse me, the statute doesn't say that. The statute says the removal period begins, begins on the latest of the following. Well, I would, Your Honor, to make sense out of the statute, all I can say is that it begins more than once. Begins what? More than once. Well, that's possible. That's all. It's possible? No. But in this instance, it didn't begin at the earliest until at least the currently applicable one didn't begin until the mandate issued in this Court and the stay was lifted. If it was lifted. Well, I'd say it began when the BIA dismissed. And then, but then when he filed the petition for review a month later, or nearly a month later, it began again. Well, let's say it was suspended, I'm sorry, until we had this Court's order. But it began once, it began again with this Court's order. It might have to begin again with the Supreme Court's order. And then we'll have another 90 days. Okay. I just want to make one point. I do think that we're not here, of course, to argue the other case, but it should be kept in mind that there were two charges for deportability in that other case. And the one that's being focused on is only the aggravated felony charge. The other one was for two CIMTs, two crimes involving moral turpitude. And even if the burglary is not an aggravated felony, it's still a CIMT. And it is inevitable that he's going to be removed because all he can do is go back and ask for voluntary departure in this case. 212C will not save him because his later conviction, the 2001, was after April 1, 1997, after the ARERA came into effect. He's not eligible for cancellation. All right. Let's go back and say if 1226 applied, then what? If 1226 applies either because there is a temporary stay or there is later a stay issued by the Supreme Court or whatever. So just hypothetically. Well, he's still in mandatory detention. He's under mandatory detention during the removal period as well under the statute in his case. Well, in every alien's case, there's mandatory detention pending the removal period. During the removal period, but the removal period runs out at some point. It runs out. It's suspended. It's not clear. That's certainly true. I understand. If we're in the removal period, I understand that he's under mandatory detention at least as of this moment. So let's leave that aside. Right. Let's go back to 1226. He's either under mandatory detention in the removal period or he's under mandatory detention. But that's what I'm trying to find out. The argument that's being made in 1226 is that Kim doesn't preclude some kind of bonding authority where there hasn't been a concession of deportation. That's the substantive argument. Your Honor, on that point, he has not conceded deportability with respect to his aggravated felony and burglary question. But with respect to whether he has two CIMTs, I have not heard any contest. And if he has one, it's frivolous. I think I'm out of time. But you agree that Kim is limited to situations in which there is conceded deportability. Your Honor, I think that's an arguable point. But I would say that the Court did not make that distinction anywhere in its analysis. They did point out in the last phrase of the opinion that this particular respondent before it had not conceded deportability. But in all the statistical analysis that was done, there was no distinction made between aliens who had conceded and those who had not deportability. And when an alien contests, it can also be to contest a denial of an application for relief. And I would submit that applications for relief take longer to decide than legal questions on whether there's deportability. But your position in this case is that he has conceded deportability as to the crime of CIMTs? Or it's frivolous if he has, because burglary and petty theft with priors are clearly CIMTs. Okay. Thank you, Your Honor. Thank you. I'd like to address one brief point, and that was the concession of deportability. If Mr. Martinez is not an aggravated felon, based on the Supreme Court's ruling in his case, he is eligible for certain relief from deportation, such as a voluntary departure. In that case, he wouldn't be deported. He'd be allowed to leave the country. And obviously, that wouldn't implicate an immigration judge's order. In that sense, he is contesting deportability, because he would have applied. And based on the immigration judge's order saying he wasn't eligible for voluntary departure, it looks like he did apply for it, he wouldn't have an immigration order to leave the country. Instead, he'd do it on his own, which would obviously make it a lot easier for him in the future to reapply for admission. So in the sense that he may not be contesting the crimes of moral turpitude, he is contesting deportability because he would be eligible for the voluntary departure. Yeah, but that is piercing Kim pretty fine, isn't it? Then you're piercing Kim pretty fine. You're saying that Kim doesn't apply to somebody who concedes that he's deportable but is seeking voluntary departure. Well, I don't know. Well, at this point, you know, if he comes back to the immigration judge and he's no longer an aggravated felon, he does have other... The immigration judge... Our position is also he might be eligible to apply for 212H relief. The immigration judge held that he wouldn't be eligible to apply for it because he was an aggravated felon, and in addition, because there was no visa immediately available. Well, he didn't apply for the visa, so we're not too sure about whether one was immediately available. And if one isn't immediately available, does that stop him from applying for the visa and waiting for it in the meantime until the IJ can reach the decision? You know, there is a way for him to make applications for relief when he's not an aggravated felon. That's the biggest problem for him at this point, facing him in the immigration court, and that's why I think the Supreme Court's resolution to that could definitely impact his ability to remain in the States or have an opportunity to voluntarily depart. I'm not conceding he's going to voluntarily depart, and that's not what he was requesting. He requested a lot of other things, including the 212H, the 1182H relief, based on the immigration judge's order. Thank you. Thank you, Your Honor. The matter will stand submitted. Morales v. Ashcroft. Anybody here on that case? No. This one is Penular. This one. You just did Morales. What happened to this one? You submitted it? Oh, that's submitted. I'm sorry. Okay. Now we come to Penular v. John Ashcroft. Where is he? Isn't he? I was expecting him. I had some coffee for him. All right.
judges: Browning, Pregerson, Berzon